UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>TREVOR SCOTT RAY,<br><br>    Defendant. | CR. 15-50043-JLV<br><br>ORDER |

    Following a three-day jury trial, on June 19, 2015, a jury returned its verdict finding Defendant Trevor Scott Ray guilty of count I of the indictment charging conspiracy to distribute a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers or salts of its isomers in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(A), and 846; count II charging distribution of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers or salts of its isomers in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(B); and count III charging possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers or salts of its isomers in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(A), and 2. (Docket 60). The court sentenced Mr. Ray to the custody of the United States Bureau of Prisons for a term of 180 months on each count, to run concurrently. (Docket 111 at p. 2). Mr. Ray appealed the conviction and sentence to the United States Court of Appeals for the Eighth Circuit. (Docket 112). The Eighth Circuit affirmed the conviction

and sentence. (Docket 122; see also United States v. Treavor Scott Ray, 690 Fed. Appx. 438 (8th Cir. 2017) (unpublished)).

Mr. Ray filed a motion for new trial. (Docket 124). Defendant cites Fed. R. Crim. P. 33 as the basis for his motion. Id. at p. 1. Mr. Ray asserts three grounds for relief. Those are summarized as follows:

1. The government engaged in outrageous misconduct;

2. Counsel had conflicts of interest which prevented them from representing the defendant; and

3. Defendant was denied counsel in violation of the Sixth Amendment.

Id. at pp. 2-7.

## FED. R. CRIM. P. 33

Rule 33 governs a new trial motion. "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Except when a motion is premised on newly discovered evidence, a new trial motion "must be filed within 14 days after the verdict or a finding of guilty." Fed. R. Crim. P. 33(b)(1). "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

"In order to merit a new trial, (1) the newly discovered evidence must have been unknown or unavailable to the defendant at the time of trial; (2) the defendant must have been duly diligent in attempting to uncover it; (3) the newly discovered evidence must be material; and (4) the newly discovered

2

evidence probably will result in an acquittal upon retrial." United States v. Stroud, 673 F.3d 854, 863 (8th Cir. 2012) (referencing United States v. Rubashkin, 655 F.3d 849, 857 (8th Cir. 2011) (citing United States v. Baker, 479 F.3d 574, 577 (8th Cir. 2007))). "[T]he standard in our circuit for a Rule 33 motion is clear and binding. The rule requires that the newly discovered evidence 'probably will result in an acquittal.'" Rubashkin, 655 F.3d at 858 (citing Baker, 479 F.3d at 577).

The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002). The court's discretion is both broad and limited. Id. It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." Id. (citation and internal quotation marks omitted). Additionally, "the court need not view the evidence most favorably to the verdict." United States v. Worman, 622 F.3d 969, 977 (8th Cir. 2010); United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000) (In determining whether to grant a Rule 33 motion, "the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses."). The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it determines a miscarriage of justice will occur. Worman, 622 F.3d at 977.

**ANALYSIS**

Each of Mr. Ray's claims of newly discovered evidence will be separately evaluated.

1.   THE GOVERNMENT ENGAGED IN OUTRAGEOUS CONDUCT

Defendant alleges the government interfered with his attorney-client relationship and collaborated with his attorney. (Docket 124 at p. 2). Mr. Ray claims the collaboration was intended to build a case against him in exchange for not developing a case against Bill Rensch, the brother of one of the attorneys in a law firm Mr. Ray used for his personal business. Id. Mr. Ray alleges the conduct of the government violated his rights under the Fifth and Sixth Amendments.[1]  Id.

The newly discovered evidence claimed by Mr. Ray is as follows:

1. Bill Rensch owned and operated City Wide Auto ("CWA"), a used car dealership in Rapid City, South Dakota. Id. at p. 2 ¶ 1.

2. Bill Rensch is the brother of Tim Rensch, an attorney in the Rensch Law Firm in Rapid City. Id.

3. Attorney John Rusch was one of the attorneys in the Rensch Law Firm. Id.

4. At some point in time prior to working at CWA, Mr. Ray asked Attorney Rusch to help him set up a business corporation as a car business or dealership.[2]  Id. at p. 2 ¶ 3.

---

[1] Mr. Ray's motion presents no argument as to how his Fifth Amendment rights may have been violated. The court deems that argument waived.

[2] On March 18, 2014, Mr. Ray was indicted on a charge of conspiracy to distribute a controlled substance, methamphetamine ("first indictment"). See United States v. Ray, CR. 14-50026, Docket 2. Attorney Rusch appeared with Mr. Ray at the initial appearance and arraignment on the first indictment. Id., Docket 6. On motion of the government, on October 6, 2014, the first indictment was dismissed without prejudice. Id., Docket 27.

4

5. After speaking with Attorney Rensch, Attorney Rusch referred Mr. Ray to Bill Rensch, suggesting they go into business together. Id.

6. Mr. Ray began working at CWA and was a silent partner with Bill Rensch. Id. at p. 3 ¶ 4.

7. Mr. Ray started purchasing cars for CWA. Id.

8. In January 2015, Attorney Rusch told Mr. Ray "that a huge federal drug conspiracy indictment was coming down and a lot of young people would be named[,] shocking the community." Id. at p. 4 ¶ 8.

9. When Mr. Ray asked Attorney Rusch if he, Mr. Ray, was going to be a named defendant Attorney Rusch said "No, I would know if you are named or are involved in the case." Id.

10. Bill Rensch was never indicted for any offense. Id. at p. 4 ¶ 8.

11. The government was investigating Bill Rensch and CWA for a long time before Mr. Ray was indicted. Id. at p. 4 ¶ 10.

12. Well known facts prior to Mr. Ray's indictment included the following: drugs were being sold out of an apartment above CWA; a man died in that apartment while going there to purchase drugs; and money was being embezzled by an employee of CWA. Id.

13. Mr. Ray was working at CWA when he was arrested on April 9, 2015.[3] Id. at p. 2 ¶ 2.

Attached to Mr. Ray's new trial motion is a five-page letter of Attorney Paul Winter dated July 17, 2016. (Docket 124-1). From Attorney Winter's

---

[3]On March 17, 2015, Mr. Ray was named in a two-count indictment for conspiracy to distribute a controlled substance, methamphetamine, and distribution of a controlled substance, methamphetamine ("second indictment"). United States v. Ray, CR. 15-50043, Docket 2.

letter, Mr. Ray asserts the following additional newly discovered evidence was uncovered:

14. David Schwarting met with Attorney Paul Pietz of the Rensch Law Firm on October 14, 2014, regarding state charges associated with Mr. Schwarting's alleged drug dealings. Id. at p. 2.

15. Attorney Pietz already knew from a state prosecutor that Mr. Schwarting's case was going to be indicted in federal court. Id. at pp. 2-3.

16. On October 21, 2014, Mr. Schwarting was indicted in federal court on the charge of conspiracy to distribute a controlled substance, methamphetamine. Id. at p. 1; see also United States v. Schwarting, CR. 14-50100, Docket 1.

17. Attorney Pietz talked with Mr. Schwarting by telephone at the Pennington County Jail on October 23 and 24, and then met with him in person on October 27 and 28. Id. at p. 3.

18. Attorney Pietz withdrew from the state case because of an apparent conflict of interest. Id.

19. On October 29, 2014, a United States magistrate judge appointed Attorney Robert Rohl to represent Mr. Schwarting.[4] Id.; see also Schwarting, CR. 14-50100, Docket 21.

20. On November 13, 2104, Mr. Ray was indicted in Lawrence County, South Dakota. (Docket 124-1 at p. 3). Attorney Nathan Nelson of the Rensch Law Firm appeared with Mr. Ray at the initial arraignment. Id.

---

[4]Neither Mr. Ray nor Mr. Winter claim Attorney Rohl had any role in the alleged conflict of interest outlined in this section. Following an *ex parte* hearing, a second United States magistrate judge granted Mr. Schwarting's request for the appointment of a new attorney. Schwarting, CR. 14-50100, Docket 51. Attorney Winter was appointed to represent Mr. Schwarting. Id.

21. On February 18, 2015, a confidential informant[5] under the supervision of Special Agent Robert Palmer executed a controlled buy from Mr. Ray at CWA.  Id.

22. On January 30, 2015, Mr. Ray purchased cars for CWA for cash. Id.

23. Sometime in 2015, Bill Rensch rented a storage unit in which Mr. Ray allegedly stored drugs.  Id.

24. After Mr. Ray was named in the second indictment, Attorney Winter met with Mr. Ray to discuss the possibility of representing him.  Id. at p. 1.  Attorney Winter decided to not represent Mr. Ray.  Id.

25. On April 10, 2015, at his initial appearance in federal court Mr. Ray applied for court appointed counsel and Attorney Ashley Parr was appointed as his attorney.  Id. at p. 3; see also Ray, CR. 15-50049, Dockets 8 and 9.

26. On June 29, 2015, Attorney Winter was appointed to represent Mr. Schwarting.  (Docket 124-1 at p. 1; see also Schwarting, CR. 14-50100, Docket 51).

27. Shortly thereafter, Attorney Winter received a telephone call from AUSA Ted McBride.  (Docket 124-1 at p. 1).  Mr. McBride knew Attorney Winter had spoken with Mr. Ray and said it was now likely that the attorney had a conflict of interest in representing Mr. Schwarting.  Id.

28. Attorney Winter declined to withdraw from Mr. Schwarting's case as he knew of no connection between his client and Mr. Ray.  Id.

29. Later Attorney Winter learned Mr. Schwarting's brother had worked at CWA as a mechanic.  Id.  To Attorney Winter's knowledge, the brother was never implicated in any drug activity at CWA.  Id.

---

[5]The confidential informant was N.W., whose name was used openly at Mr. Ray's trial and whose cooperation and confidential informant agreements were exhibits at trial.  See Ray, CR. 15-50043, Docket 64 at pp. 3:13-14:2, 5:15-6:25; id. Trial Exhibits 41-42, Docket 61 at p. 2.

30. At Mr. Ray's trial, Bill Rensch testified he proffered to law enforcement to avoid the appearance that he was involved in Mr. Ray's drug activities at CWA.  Id. at p. 2.

31. Attorney Paul Winter continued to represent Mr. Schwarting as of July 17, 2016.  Id. at p. 1.

Mr. Ray alleges he "was manipulated into going into business with Bill Rensch so that Rensch Law firm could collaborate with [government] agents . . . to set up Ray and curry favor to Bill Rensch for past and present malfeasance."  (Docket 124 at p. 3 ¶ 5).  He asserts Bill Rensch was likely paid by the same government agents to help pay off "his massive debt."  Id. Mr. Ray alleges he became aware of this "scheme after he was convicted when a fellow inmate at the Pennington County Jail approached him in Church at the Jail."  Id. at p. 3 ¶ 6.  According to Mr. Ray, the information provided by the prisoner was that Mr. Ray "had been set up and that he had clear proof through timing and action taken by [the] Rensch Law firm and authorities of the [Drug Enforcement] Task Force and [the] U.S. Attorney's Office; [s]pecifically, [Assistant United States Attorney] Ted McBride."  Id.

Mr. Ray contends the letter of Attorney Paul Winter provided to Mr. Ray's attorney, Robert Sirianni, on July 17, 2016, "revealed the newly discovered evidence that Ray had been previously provided by the fellow inmate."  Id. at p. 3 ¶ 7.  Mr. Ray argues the content of Attorney Winter's letter "sets out the timeline and obvious problems that existed through Ray's contacts with the Rensch Law Firm and Bill Rensch at CWA."  Id.

8

Mr. Ray alleges Attorney Rusch lied in January 2015 as he knew Mr. Ray was being charged and that the attorney was working with Attorney Rensch, Bill Rensch and law enforcement to set up Mr. Ray. Id. at p. 4 ¶ 8. Mr. Ray submits this falsehood occurred because Bill Rensch was never indicted and he would "reap the benefits" of Mr. Ray's indictment. Id.

As stated above, "[i]n order to merit a new trial, (1) the newly discovered evidence must have been unknown or unavailable to the defendant at the time of trial; (2) the defendant must have been duly diligent in attempting to uncover it; (3) the newly discovered evidence must be material; and (4) the newly discovered evidence probably will result in an acquittal upon retrial." Stroud, 673 F.3d at 863 (reference and internal citation omitted). In the Eighth Circuit, the standard "requires that the newly discovered evidence 'probably will result in an acquittal.'" Rubashkin, 655 F.3d at 858 (citing Baker, 479 F.3d at 577).

Mr. Ray's spin on the information outlined above is similar to but not consistent with the trial evidence. Bill Rensch's cooperation with law enforcement was well known by Mr. Ray's attorney in advance of trial. Attorney Parr aggressively cross-examined Bill Rensch about his financial situation; Mr. Ray's car dealings at CWA, including fronting money to CWA to purchase cars for CWA and Mr. Ray purchasing cars for his own purposes which were titled in Bill Rensch's business name to provide a method of hiding drug profits; the lawyers in Bill Rensch's family, including his brother, Attorney

9

Tim Rensch; and Bill Rensch's decision to cooperate with the Drug Task Force to avoid prosecution.

While Mr. Ray classifies the information as new evidence, none of it qualifies as new evidence meriting a new trial. Most of the information Mr. Ray claims to be new evidence is not, and was not, material to the second indictment and his trial. Furthermore, the information would not "probably . . . result in an acquittal." Rubashkin, 655 F.3d at 858. The evidence at trial was more than sufficient to support the conviction. Even if the information claimed by Mr. Ray was material and admissible, it would not have impacted the verdict.

Built on Attorney Winter's conjectures, Mr. Ray's speculation that the United States Attorney's Office was engaged in outrageous conduct fails. Mr. Ray's argument does not connect the dots to create a portrait of collaboration between the government, attorneys in the Rensch Law Firm and Bill Rensch. Mr. Ray's motion for new trial on this ground is denied.

2. COUNSEL HAD CONFLICTS OF INTEREST WHICH PREVENTED THEM FROM REPRESENTING MR. RAY

Mr. Ray contends the attorneys of the Rensch Law Firm had a serious conflict of interest preventing them from representing him in the state and federal criminal cases identified above. (Docket 124 at p. 5). Defendant's basis for this argument is the same conduct outlined earlier in this order. Id. at pp. 5-7.

The court need not resolve whether any attorney in the Rensch Law Firm had a conflict of interest preventing them from representing Mr. Ray in any pretrial proceeding in this case. His claims of conflict of interest in any state court proceedings are not relevant to his motion for new trial and likewise need not be resolved in this case.

Mr. Ray makes no claim of a conflict of interest with the attorney who did represent him at trial, Joseph Ashley Parr. For that reason, Mr. Ray's second ground for the motion for new trial is denied.

3. DEFENDANT WAS DENIED COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT

Mr. Ray claims his right to personally choose counsel to represent him under the Sixth Amendment was violated. Id. at pp. 7-8. Mr. Ray claims he "was stuck with Ashley Parr as his appointed attorney and Parr had never tried a case in federal court and was obviously not experienced enough to be taking on these types of [drug conspiracy] cases." Id. at p. 8.

"Normally, a collateral postconviction action under 28 U.S.C. § 2255 is the appropriate means for raising a claim of ineffective assistance of counsel and for developing a record sufficient to examine counsel's performance." United States v. Villalpando, 259 F.3d 934, 938 (8th Cir. 2001) (referencing United States v. Jackson, 204 F.3d 812, 815 (8th Cir. 2000)). "The district court, however, may consider the claim on a motion for new trial if it has developed an adequate record on the issue." Id. (referencing United States v. Stevens, 149 F.3d 747, 748 (8th Cir. 1998)).

11

Contrary to Mr. Ray's unsupported declaration, Attorney Parr is a member of the Criminal Justice Act panel of attorneys qualified to practice criminal law in the District of South Dakota. Attorney Parr has been counsel in a number of criminal cases in federal court since 2003, including conspiracy to distribute controlled substances cases. Whether Attorney Parr provided effective counsel to Mr. Ray is an issue better resolved in a proceeding brought under 28 U.S.C. § 2255.[6]

Mr. Ray makes other motions collaterally associated with his claim of ineffective assistance of counsel. See Dockets 133-135. Those motions are moot and are dismissed without prejudice.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion for a new trial (Docket 124) is denied.

IT IS FURTHER ORDERED that defendant's motions (Dockets 133-35) are denied without prejudice as moot.

Dated February 11, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

---

[6] Mr. Ray filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. See Ray v. United States, CIV. 18-5033 (D.S.D. 2018). One of the bases asserted in that petition is ineffective assistance of counsel. Id. at pp. 7-9.